Our next case this afternoon is 5-25-166, Kenny Doolin Petitioner v. Greg Doolin Respondent. Mr. Doolin is in Atellans. Atellans is represented by Mr. Thomas Diewitsch. Mr. Diewitsch is represented by Mr. Andrew Warney. Mr. Diewitsch is represented by Mr. Andrew Warney. Members of the court staff, my name is Tom Diewitsch. I represent the husband in this matter, Gregory Doolin. I'm here today to ask the court to reverse the trial court's, Judge Bowers' February 2024 order denying Mr. Doolin's motion to reconsider. We have raised two issues in our brief. One concerns the enforceability of the disposable retirement pay issue. And the respondent's retirement benefits, which is what I will focus on today. The other issue concerns the court's denial of the respondent's motion to modify. The circuit court committed a reversible error in granting the petitioner's division for retirement benefits. This is an issue that I think is pretty clear and subject to day-to-day review because it involves two things. It involves the court's interpretation of the marital settlement agreement that was entered between the parties in 2018. And it also involves construction of the federal statute, specifically the Uniformed Services Former Spouses Protection Act. Both those cause this court to review these issues under a de novo standard of review. The marital settlement agreement here cannot be more clear. It was drafted by attorneys who represented the parties at the time. Everybody was on board with it. It was signed by the parties and approved by the court. And it specifically provides that the wife shall be awarded one-half of the husband's disposable military retired pay. Specifically used the words disposable military retired pay. The parties, there are cases such as Honore and Marshall, which use phrases such as one-half the gross military pension. But this is not that type of case. This is a case where the parties, you know, unlike Honore and Marshall where the appellate court held that the parties intended there would be funds for the petitioner because of the phrase that was used, here the phrase is very specific in that it used disposable military retired pay. It did not have, nor did it have an indemnity provision where one spouse would agree to indemnify the other should his benefits would lessen. That's important as well. This court is bound, or the trial court is bound to interpret that marital settlement agreement like it would any other contract. And to give effect to the plain meaning of the words of that contract. Military retirement pay which is waived to receive VA disability benefits or Chapter 61 disability benefits are excluded from the definition of disposable retired pay. The USFSPA, that's the Uniformed Services Spouses Protection Act, authorized, it did two things. First of all, it authorizes states to treat as community property disposable retired pay. But it also has specific definitions of disposable retired pay to exclude VA disability benefits and to exclude Chapter 61 disability benefits. Mr. Doolin receives both. After the divorce, when he retired from the military in 2024, he was retired at 100% for disability. The United States Supreme Court has twice held, and that's the Howell versus Howell decision from 2017 and then earlier, I believe it was the Mansell decision in 1989 that states could not treat Chapter 61 and VA disability benefits as community property that can be divided. Now, Mansell, in the Mansell case, there was a marital settlement agreement, and in that case the husband actually agreed to pay 50% of his military benefits knowing that a portion of those at the time were for disability. And the case worked itself up to the Supreme Court, and the Supreme Court interpreted the USFSPA and said he can't do it. And I think there's a couple, I talked about that case in my brief, and in rereading it yesterday, there's a couple interesting passages towards the end of the majority's opinion that I would just kind of like to highlight. At the very end of the majority's opinion, it says that the author, I believe it was Justice Marshall, stated that the Uniformed Services Former Spouses Protection Act, when looking at the legislative history of that, it was clear that it was intended to create new benefits for former spouses, but it was also intended, the legislative intent was to place limits on state courts to protect military retirees. And also what I think we're seeing here is kind of some sympathetic reasoning on behalf of Judge Bowers, with all due respect to her, but that Justice Marshall noted in the second to last paragraph of the majority opinion, we realize that reading the statute literally may inflict economic harm to former spouses, but we decline to misread a statute in order to reach a sympathetic result. When doing so, it would clearly violate the statute. Now, some of the cases relied upon, I know, by the wife in this case, including the Enright Benson, are clearly distinguishable. Enright Benson, which was the case they cited in their petition to divide the retirement benefits, was a state case dealing with the Fireman's Pension Fund, and it basically held that the spouse cannot unilaterally act to reduce his benefits. But the distinctions are pretty obvious here. Number one, in this case, Mr. Doolin did not voluntarily opt to retire on disability. The testimony is very clear from trial. He was given no choice. But more importantly, the Benson case did not involve the interpretation of a federal statute, let alone a federal statute's definition of a disposable retired pay. So there was no issue of the supremacy clause in that case. It's distinguishable. Twenty-eight years after the Mansell decision, the Supreme Court of the United States had a chance to revisit this issue, and they didn't change anything with the Mansell decision. In fact, and that's the Howe case, and I would submit that's kind of even more on point, because what's interesting in Howe is that the divorce decree was issued in 1991, provided the wife was awarded 50 percent of the husband's military pension, and it made no mention of indemnification should his military pension change post-dissolution. Now, remember, in the Mansell case, the husband was already on disability. In Howe, 13 years after the divorce decree was entered, he elected to receive disability payments, and the wife filed a motion to enforce. I think in rereading that case, what I noticed was the trial court, which I think is there's some reasoning here, that was rejected by the Supreme Court. The trial court in the Howe case said that the wife had a vested interest from the decree, but the Supreme Court, when the case worked itself up, the Supreme Court rejected that reasoning. It again held that state courts cannot order that interest to indemnify their spouses for any reduction that happens, and again, that was the reduction that happened post-dissolution. And it very clearly held state courts could not avoid the Mansell decision by describing an order as a reimbursement order or an indemnification order. Recently, the Illinois Supreme Court, I'm sure the Court is well aware, addressed the issue of disposable retirement pay, and I believe it's pronounced the Tron Sioux decision. But in that case, the difference here is that in the Tron Sioux case, the express language of the marital settlement agreement was that the disability payments were marital property, and the parties agreed that if the federal government did not send, and that would be DFAS, did not send the wife the payments, the husband would pay her. I mean, he agreed to do that. So what the Supreme Court of Illinois held was Mansell and Howe were distinguishable because they did not involve parties agreeing to an indemnification provision, number one, and that's not the case here because Mr. Dillon did not agree to an indemnification provision as in Tron Sioux, and then number two, neither the Supreme Court of Illinois held that the husband there specifically agreed to use his benefits however he wanted after he received them, including the disability benefits. That's not the case here. The express language of the contract here indicates the parties' intent to only divide disposable military retirement pay. And so finally, the Court in this case, Judge Bowers, seemed to be relying upon this because she held that she found the husband, Mr. Dillon, was able to satisfy his obligation on behalf of the $3,356 with sources other than his military disability benefits, and that's the kind of language, when I read her order, that's the kind of language that's within this Andre Nelson case, but again, the difference there is that the agreement in Andre Nelson was that the wife would receive gross retired pay, not disposable military pay, and the appellate court held it was clear the parties intended the wife would receive a portion of the total retirement pay. That's not the case here. The agreement here, the Court was bound to give the agreement here to interpret it using the plain language and give effect to the meaning of the words in that statute. And so for those reasons, it's our position that I think this Court has to reverse the trial court's order denying the respondent, Mr. Dillon's, motion to reconsider her grant of the wife's petition to divide retirement benefits. And then finally, if I may, Part C of our brief within this first argument notes that even if this Court were to affirm, I think it should remand, the judge, it's our position, got the calculation wrong by simply saying that the retirement should have been divided by one half. When, in other words, the marital settlement agreement provided that the wife would be awarded one half of the disposable retired pay that the respondent would receive if she retired at a base pay of $3,356. But she literally just divided that in half when there's, we cite to a formula that's used by the military, and so I believe that there should be a recalculation of that amount. I had suggested an amount to the judge in our closing arguments, the written closing arguments we submitted in Macon County, but I believe that that was error and should be remanded for that basis alone. If there's no questions, I would just thank the Court for your time. Questions? Thank you. Can you clarify the last part? My recollection was that was the only time that was brought up was in your closing argument, written closing argument to the Court, the calculation that you're mentioning. That's correct. Right. Yeah, it was brought up. I mean, it was, well, to me, the evidence was presented through the forms of the exhibits and testimony, and then we argued it in the closing argument what it should be. It wasn't necessarily brought up during the evidentiary stage. That is correct. I don't recall, correct me if I'm wrong, in the hearings itself that that issue was brought up as to the Court, how to calculate that and a misinterpretation of what that amount would be. I believe that's correct. Yeah. I wouldn't dispute that.  All right. I'm going to give you a chance to rebuttal momentarily. Do you have any questions? No, thank you. Thank you, Your Honor. Mr. Ballard? Please record, Mr. Ewig. My name is Andrew Ford, and I'm representing Penny in this instance here, who was the wife. This case involved a post-divorce dispute between Penny Doolin, who is the appellee, and Greg Doolin with respect to a couple of issues. First was with respect to Greg Doolin's retirement benefits versus his disability benefits that he ended up receiving. And the second issue was with respect to the petition for a termination of maintenance. That was not addressed by Mr. Ewig today, but I would, I guess, maybe briefly address that as far as this. And the question was whether or not the trial court could have used discretion in denying Mr. Doolin's petition to modify that maintenance or terminate the maintenance. And the court, the trial court decided not to terminate the maintenance, which then precipitated the motion to reconsider. And this appeal, one of the issues of this appeal filed by Mr. Doolin, as the court is, well, versed in the statute here, the section 510A5 does set out the different factors as to applying the facts. If there was a substantial change in circumstances, how does the court analyze that? And wanted to kind of briefly go through those, but I think it might be also beneficial to look at what it was actually alleged by Mr. Doolin in his petition and maybe comparing those factors here. Mr. Doolin had alleged in his petition that there was a good faith change in employment that he had. In fact, that he was now disabled and receiving a disability. But I think it's important for the court to, in analyzing this, that yes, it is true, he's receiving a disability. But at the time of the actual divorce in 2018, of which the parties had been married for about 28 years at that point, Mr. Doolin's income from the financial affidavit, from the evidence that was presented, was about $5,200 a month. At the time of the filing of the petition to terminate the maintenance, he was earning over $10,000 a month. With respect to a second allegation, this was with respect to life insurance and what he was supposed to carry. That was addressed in the brief by Mr. Ewick. He alleged that he was uninsurable through private life insurance companies. But the evidence was, in fact, that he had until 2026, he would still be insured through his current policy, which would cost him nothing. And then after that, he was going to be able to receive life insurance that was about $1,200 per month. So that fact was proven to be not correct or something that was not proven. With respect to Penny's income at the time of the dissolution, I believe the evidence showed that she was earning about $2,400 per month. She was at the same job that she was at the time of the divorce compared to the time that the petition to terminate was filed. And she was at that time earning $3,100. Her testimony was that due to the cost of living increases, that any increase in salary was essentially offset by the increased cost of living. There was also an allegation by Mr. Doolin that the earning annual sums were similar to Penny's, if not the same as Penny's. There was an attempt during the presentation of the evidence to show that. And that was shown to not be true as Mr. Doolin was earning over $10,000 per month and Ms. Doolin was earning $3,100. There was an allegation that Penny had inherited a large sum of money. That turned out to be a non-issue as it resulted in her having $20,000 in a bank account, which $20,000 in a bank account, an asset from an inheritance, as this panel knows the law, is that she is not required to use assets in order to supplement her living expenses. Also, a $20,000 isn't going to last a very long time, especially if you're looking at what the length of the marriage was and the fact that she was a stay-at-home mom for the majority of that time. Mr. Doolin also alleged that Penny was self-supporting and no longer in need of maintenance. And that, as I expressed in the brief and as was shown at the trial, was also shown to not be correct. So we believe that the court did arrive at the right decision in denying the petition to terminate the maintenance. With respect to the second issue, it was alleged by Mr. Doolin that the trial court erred in granting Penny Doolin's petition for division of retirement benefits when the retirement benefits are now re-characterized as disability benefits. I think one thing that we have to do is we have to look at what the actual language was of the marital settlement agreement that the parties had entered into. And that was, at the time, Article 2, Paragraph 9 of the MSA, also awarded Penny one-half of Greg's disposable military retired pay that Greg would receive had Greg been eligible to receive military retired pay as an E-7 on May 2, 2018, with a retired base of $3,356.20 monthly and with 1879 reserve points earned during the marriage. And I think that this was brought up in a question that the court had today. And that was, it's our position that we have to analyze what does that mean? Penny testified as to what she thought that meant. And her testimony was that she should receive one-half of the $3,356.20. There was no, there were no facts or testimony presented in opposition of that. But under inter-marriage, Frank, don't we only look to parole evidence or look to interpret? I mean, if it's ambiguous. But here, it seems the language seems fairly clear and unambiguous. It was to cover disposable military retired pay. That doesn't say disability. The language is clear, so we don't go to parole evidence. We don't have to interpret the language when the language is clear. So how do you explain that? Well, I think that that's when we get into the Manziel and Nielsen cases then. In those cases, wasn't the disability already in existence at the time of dissolution? Here, it came after the fact. Yes, that, well, I think it's in part true. I think that there were increases in the disability that the individual was receiving. The disability did, he received, I believe, I don't remember if it was the Nielsen case, that he was receiving a certain percentage of disability and that it was increased at that time. And I think that the Nielsen case is, I do agree that their court did rely on the Nielsen case. And that Nielsen case, I do believe, does give the court the authority to do what it did under these circumstances in that we're not dividing the actual disability benefit that he's receiving, but, yes, as a matter of following this agreement that the parties had and as a matter of equity, we've got an individual who was a stay-at-home mom, who wasn't working, who was, for rent, her own opportunities to earn and put money in retirement as a sacrifice for the family, only to then get down the road and, lo and behold, now he's receiving a disability. And he says, well, you don't get any of that because it's a disability. And I think that this Nielsen case is the reason why that is, by the court, maybe the ruling under those circumstances. Because under these circumstances, I do believe that, as a matter of equity, it is fair. And I do believe that the law does allow, if there is another source of funds that he has to be able to satisfy this, that is not his military disability. And there were, under these set of circumstances, his sources of income, $3,900 from his military disability, another $2,000 and some change with respect to his Chapter 61 payment. And then he also had another $2,500 with respect to his Social Security disability and an additional $1,500 stipend from the state for some foster kids. And so the court did find that out of that $10,000 that there were, that he did have the ability or another source of funds. And so I think that this does line up with the Nielsen case and support the decision that the court had made, in that there was no legal error so that the court is not forced to overturn the decision with respect to that. I would mention, she did mention the Benson case. That was the case that we had placed into the initial petition. That is distinguishable, I think, in a large majority of it because it doesn't deal with the military. It is a fireman, so it is a state pension. But it involves the same idea. So it was cited as it does involve the same idea. With respect to what does this... Let's say that the court here decides that we're not going to reverse the decision awarding Penny an amount with respect to trying to follow the marital settlement agreement and we have to get to a calculation. I think that that issue has been waived as it was not testified to at all in court. And so we would stand on that as our argument with respect to that. A clarification. I didn't interpret it this way from the briefs. In your argument here, I thought you used the term $1,200 per month on life insurance. I thought the brief said it was $100. Yes, I misspoke. The testimony in court was that it would cost him, I believe, $100,000 for every $100,000 in life insurance that he would receive. And so the amount that he was supposed to carry in accordance with the marital settlement agreement was $100,000. So essentially it would cost him $1,200 annually and not per month. Thank you. I'll answer briefly. So with respect to the maintenance argument, the trial court here denied a motion to modify maintenance based upon her finding there had not been a substantial change in circumstances. I get it. She's free to modify it however she wants. So there's two steps. She had to find a substantial change in circumstances. Then she has a lot of discretion to modify it however she wants or if she wants to at all. But to lose here on a substantial change in circumstances, I do believe, constituted an abuse of discretion. There was plenty of testimony because a substantial change in circumstances would have been either the husband's ability to pay had changed or the receiving spouse's need of the maintenance has changed. Her needs have changed. She has little to no debt. She owns her house outright. Her income had went up, I think, $1,600. In fact, I discussed in the brief and it was argued in court, when you figure what she's making now, she's now working full-time where she wasn't working at the time of the dissolution. And if you figure out what she's making per year now at her current job, it's about the same. One of our exhibits was the respondent's Social Security income statements. If you average them out, what she's making now is about the same. So I think there was a substantial change in circumstances. And secondly, counsel goes through a lot of links, and this is argued at the trial court level and discussed by the judge as well, to make a deal of the fact that he listed on his financial affidavit a gross monthly income of $10,000. I go back to the majority's notation in the Mansell decision where they talk about what's being done here is it's in contradiction of the majority's notation in that Mansell decision that they would decline to misread the Uniformed Services Former Spouses Protection Act in order to reach a sympathetic result. They have to give that act its plain meaning and interpret that act how it was intended. And that's what's being done here when you talk about the $10,000 listed on the financial affidavit. It's a play towards the court's sympathy. But in doing so, what they're failing to mention is that $10,000 is all from disability of one sort. It's either SSI, Chapter 61 disability from the military, or VA disability. Which is, even if the Nelson case applied, which I don't think it does, because the agreement there was the husband agreed to pay a gross retirement, not a specific disposable military retirement pay as that term is used within the federal statute. But even if Nelson applied here, what funds was the court saying he had to pay out of it from sources other than his disability? Because that's the only payments he has. He's got almost $4,000 in VA disability, $2,500 in SSI, and Chapter 61, $2,000. That's $8,500. I think the other $1,500 was some disability payments he received because of his step-grandchildren. And so, for those reasons, I don't think the Nelson case even is applicable. And even if it was, though, the court misapplied it here. So I would just thank the court for your time. Thank you. Thank you. Have either of you argued in this building before? Yes.  All right. I was noticing your office was in Springfield and Decatur. Before, we had been arguing this in Springfield, but we're proud of our building here also because Clare Barton used this as a hospital when a tornado struck Mount Vernon in the 1870s. And Abraham Lincoln stood where you stood. And General McClellan was the president of the Illinois Central Railroad. He sat where you're sitting. In 1859 argued a case here. So we're very proud of our building. It's the longer drive for you to get to come here. We're proud of our building. Yes. We appreciate your arguments today and the arguments in your briefs. We will take the matter under advisement, issue decisions in due course. We have some non-oral matters to take care of. That concludes our oral argument presentation. We're scheduled time today.